*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0164P (6th Cir.)
File Name: 04a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

CRAIG ALAN SWANBERG
(02-1659) and ADAM ELWIN
TUIMALA (02-1836),
*Defendants-Appellants.*

Nos. 02-1659/1836

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 01-00033—Robert Holmes Bell, Chief District Judge.

Argued: April 29, 2004

Decided and Filed: June 3, 2004

Before: GUY, GILMAN, and COOK, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Eva A. Kipper, McDONALD, MARIN & KIPPER, Marquette, Michigan, Jane E. Lee, Portland, Maine, for Appellants. Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for

Appellee. **ON BRIEF:** Eva A. Kipper, McDONALD, MARIN & KIPPER, Marquette, Michigan, Jane E. Lee, Portland, Maine, for Appellants. Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

———————

## OPINION

———————

RONALD LEE GILMAN, Circuit Judge. Craig Swanberg and Adam Tuimala were part of a drug distribution ring operating in Illinois and Michigan. Tuimala sold cocaine and marijuana to Terri Sanderson of Marquette, Michigan. Sanderson in turn distributed the drugs to various individuals, including Swanberg, who would then sell the drugs and share the profits with Sanderson. Swanberg was convicted by a jury of conspiring to distribute cocaine and of possessing cocaine with the intent to distribute, all in violation of 21 U.S.C. §§ 846 and 841(a)(1). He was sentenced to 63 months in prison. Tuimala pled guilty to one count of conspiring to distribute cocaine, also in violation of 21 U.S.C. §§ 846 and 841(a)(1), and was sentenced to 84 months in prison.

Swanberg contends on appeal that the district court committed clear error in determining the drug quantity that was attributable to him for sentencing purposes. Tuimala argues that his waiver of the right to appeal his sentence was invalid because his plea agreement with the government was breached when the district court unwittingly relied on information from Tuimala's guilty-plea proffer to enhance his sentence for a leadership role in the offense. For the reasons set forth below, we **AFFIRM** Swanberg's sentence but **VACATE** Tuimala's sentence and **REMAND** his case for the limited purpose of resentencing without the sentence enhancement.

# I. ANALYSIS

## A.   The quantity of drugs attributable to Swanberg

Swanberg contends that the district court erred in attributing 18.75 ounces of cocaine and 9 grams of marijuana to him in calculating his sentence. "We review a district court's drug quantity determination for clear error. The government must prove the amount to be attributed to a defendant by a preponderance of the evidence." *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000) (citations omitted). This court has also held that "[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *Id.*

At sentencing, the district court relied on the following statement of facts set forth in the Presentence Report:

> Using the most conservative estimate of the quantity of drugs received by Ms. Sanderson from Mr. Tuimala, she is culpable for 25 ounces (708.75 grams) of cocaine and 8 pounds (3,628.8 grams) of marijuana. This quantity was arrived at by taking into account Ms. Sanderson's report of her frequency and quantity of purchases from Mr. Tuimala, along with Mr. Tuimala's report of his sales to Ms. Sanderson and her boyfriend when the two traveled to Chicago for said transactions. Using a two-week interval between purchases beginning on February 1, and ending on May 19, 2001, it was estimated a total of eight transactions can be attributed to Ms. Sanderson. The evidence at hand reflects four 2-pound purchases of marijuana, and the following cocaine purchases: four at 4 ounces each (based [upon] Mr. Tuimala's report and Ms. Sanderson's acknowledgment of transactions of up to 4 ounces), one at 3 ounces (based on Ms. Sanderson's report of transactions of 2 to 3 ounces), and three at 2 ounces each (based on conservative application, to the remaining number of

> transactions of the minimum amount Ms. Sanderson reported she would purchase/receive from Mr. Tuimala).

> Ms. Sanderson testified [that] Mr. Swanberg received 75 percent of the cocaine she purchased from Mr. Tuimala. Taking into account the conservative quantity of cocaine attributed to Mr. Sanderson, receipt of this percentage of the total amount distributed or intended for distribution provides a culpability attributable to Mr. Swanberg of 18.75 ounces (531.5 grams).

Although Swanberg objected to the Presentence Report's calculation of the drug quantity attributable to him, he produced no contradictory evidence at the hearing. This court has held that "[i]n most instances, a sentencing court may rely on undisputed facts that are recited in a presentence report to conclude that the defendant committed acts offered as relevant conduct." *United States v. Shafer*, 199 F.3d 826, 830 n1. (6th Cir. 1999); *see also* Fed. R. Crim. P. 32(i)(3) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact . . . ."). In the present case, the facts set forth in the Presentence Report were consistent with the other evidence presented in Swanberg's case. The district court therefore did not clearly err by relying on the Report in determining the quantity of drugs attributable to Swanberg.

## B.   Tuimala's waiver of his right to appeal

Criminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily. *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001). In the present case, Tuimala waived his right to appeal his sentence in his plea agreement, but now contends that the waiver was not knowingly made because the district court erroneously informed him at the sentencing hearing that he had the right to appeal. "This Court reviews the question of whether a defendant waived his right to appeal

his sentence in a valid plea agreement de novo." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003).

The plea agreement between Tuimala and the government states that "[t]he defendant and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any issues that relate to the establishment of the guideline range . . . ." At the plea colloquy, Tuimala answered "yes" when the district court asked if he "had an adequate opportunity to read and review this entire plea agreement with [his] attorney[.]" The prosecutor then read into the record various parts of the plea agreement. He also explained that the agreement "specifically states that there is no appeal—Mr. Tuimala waives the right to appeal the calculation of the guideline range and . . . he can only appeal a departure upward or downward from the guideline range or a sentence that exceeds the maximum set by law." Finally, the district court expressly found that "the plea is made knowingly and with full understanding of the rights that I've explained to the defendant." At the subsequent sentencing proceeding, however, the district court erroneously informed Tuimala that "[y]ou have a right of appeal from the sentence in this matter." Tuimala contends that, as a result of the district court's incorrect statement at sentencing, he did not knowingly give up his right to appeal.

This court faced a nearly identical situation in *United States v. Fleming*, 239 F.3d 761 (6th Cir. 2001), where the defendant waived his right to appeal his sentence as part of a written plea agreement. At the plea colloquy, the district court orally informed the defendant that "the Government has the right to appeal any sentence that I might impose. You, on the other hand, have given up your right to appeal any sentence that I might impose, even though you don't know what the sentence is going to be." *Id.* at 763. The court also found "that Fleming's guilty pleas had been knowingly and voluntarily entered." *Id.* At the subsequent sentencing proceeding, however, the district court erroneously informed the

defendant that "you do have the right to appeal this matter to the United States Court of Appeals for the 6th Circuit." *Id.* On appeal, this court held that "[t]he record here clearly demonstrates that Fleming understood the waiver contained in the plea agreement[,]" *id.* at 764, and that the district court's subsequent statement to Fleming did not restore his right to appeal. *Id.* at 765. This court therefore dismissed the appeal. *Id.* at 765-66.

As in *Fleming*, the waiver provision in the present case was contained in a written plea agreement, Tuimala was informed in open court that he had given up his right to appeal whatever sentence he received, and the district court expressly found that Tuimala made the waiver knowingly. Tuimala also "had an adequate opportunity to read and review this entire plea agreement with [his] attorney[,]" a factor not mentioned in *Fleming*, but which also suggests that Tuimala knowingly waived his appellate rights. We therefore conclude that Tuimala knowingly waived the right to appeal whatever sentence he received, despite the district court's incorrect statement to the contrary at Tuimala's sentencing hearing.

**C. The government's alleged breach of its plea agreement with Tuimala**

*1. Standard of review*

Tuimala's alternative position is that even if he would have normally been barred from appealing due to his waiver, he is not so bound in the present case because the plea agreement was breached when information from his guilty-plea proffer was used to enhance his sentence. This use was contrary to the government's express promise that the proffer information would not be used "in a subsequent prosecution or at sentencing in this case."

Whether the plea agreement was breached is an issue that we would presumptively review de novo. *United States v.*

*Barnes*, 278 F.3d 644, 646 (6th Cir. 2002). In the present case, however, Tuimala objected at sentencing to the district court's application of the sentence enhancement, but did not argue that the plea agreement had been breached. The government therefore contends that Tuimala has forfeited this argument on appeal. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (explaining that "forfeiture is the failure to make the timely assertion of a right").

In support of its position, the government relies on the case of *United States v. Cullens*, 67 F.3d 123, 124 (6th Cir. 1995) (per curiam), where the argument that the prosecution had breached the plea agreement was deemed forfeited because the defendant had failed to raise the issue at sentencing. The *Cullens* court, however, did not consider Rule 52(b) of the Federal Rules of Criminal Procedure, which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." This was an oversight in light of the fact that in *Olano*, decided two years prior to *Cullens*, the Supreme Court explained that "forfeiture . . . does not extinguish an 'error' under Rule 52(b)." 507 U.S. at 733. Moreover, in *United States v. Koeberlein*, 161 F.3d 946 (6th Cir.1998), this court noted that some prior panels, including the one that decided *Cullens*, had "declined to review objections that were not raised below[,]" *id.* at 948, while other panels had applied plain-error review where defendants failed to raise a sentencing issue in the district court. *Id.* at 949. The *Koeberlein* court went on to state:

> As these cases indicate, our opinions have not made crystal clear whether failure to raise a timely objection to a sentencing decision in the district court precludes us from conducting review for plain error on appeal. We hold that it does not. Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed. R. Crim. P. 52(b) before we may exercise our discretion to correct the error.

*Id.* This court's decisions after *Koeberlein* have consistently applied plain-error review where a defendant fails to claim during sentencing that the government has breached the plea agreement. *Barnes*, 278 F.3d at 646; *Teeple v. United States*, No. 00-1389, 2001 WL 873644, at *1 (6th Cir. July 26, 2001) (unpublished opinion).

In light of *Olano* and the authorities cited above, we will apply the plain-error standard of review to this issue. "When reviewing a claim under a plain error standard, this Court may only reverse if it is found that (1) there is an error; (2) that is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Barnes*, 278 F.3d at 646. Plain error may be committed by the government as well as by the district court. *Id.* at 649 (reversing a conviction because the government failed to make a certain sentencing recommendation as promised in the plea agreement).

### 2.    *Alleged breach of the plea agreement*

The government promised in the written plea agreement that the information from Tuimala's guilty-plea proffer would not be used against him at sentencing. In his proffer, Tuimala stated that he

> supplied multiple individuals with cocaine and marijuana for distribution in Marquette County, Michigan. These distributors would receive their supply of illegal drugs from the defendant through a rendevous with him at predetermined locations in Chicago, Illinois or Marquette.

This information was repeated in Paragraph 55 of the Presentence Report. Significantly different information was contained in the statement of facts to which the parties stipulated as part of the plea agreement. The stipulation provides in relevant part that "[f]rom February to May, 2001, Adam Elwin Tuimala supplied Terr[i] Sanderson with cocaine

. . . . Sanderson, in turn, sold the cocaine to Craig Swanberg, Richard Feathers, and others." The material difference between the proffer and the stipulation is that the proffer states that Tuimala supplied drugs to "multiple individuals[,]" whereas the stipulation names only Sanderson as the recipient of drugs from Tuimala.

At sentencing, the district court enhanced Tuimala's offense levels by two levels for his alleged leadership role in the offense. The court made the following statement in connection with the enhancement:

[A page of the plea agreement] contains the parties' stipulation to the following statement of facts. . . .

[F]rom February to May of 2001, Adam Elwin Tuimala supplied Terri Sanderson with cocaine, which Sanderson distributed to others in and around Marquette, Michigan. . . .

Is that accurately what was entered?

[Defense counsel]: That's accurate, Your Honor.

[The prosecutor]: Yes, Your Honor.

THE COURT: Okay. Paragraph 55 [of the Presentence Report] as to role in the offense, I believe, which the objection specifically addresses is that Mr. Tuimala supplied multiple individuals with cocaine and marijuana for distribution in Marquette County, Michigan. These distributors would receive their supply of illegal drugs from the defendant through a rendezvous with him at predetermined locations in Chicago, Illinois or Marquette. *That's accurate. That's what the parties agreed to. . . .*

I think this is totally pertinent. This paragraph that I've read, the Court has read here that has been signed by the defendant and his lawyer and the government's lawyer,

that's leadership. Not organizing, but it's leadership, and the two-point calculation for leadership this Court believes is appropriate in this case.

(Emphasis added.)

The district court's statement indicates reliance on both the plea agreement stipulation and Paragraph 55 of the Presentence Report (which contains the information from the proffer) in enhancing Tuimala's sentence. After describing Paragraph 55, the court incorrectly stated: "That's accurate. That's what the parties agreed to. . . . I think this is totally pertinent." In fact, however, the parties agreed only to the facts as set forth in the stipulation, not as stated in Paragraph 55. The plea agreement was therefore violated when the district court unwittingly relied upon the information from Tuimala's guilty-plea proffer in imposing the sentence enhancement, and the prosecutor said nothing to correct this error. This breach adversely "affected [Tuimala's] substantial rights[,]" *Barnes*, 278 F.3d at 646, because it caused Tuimala to receive a more severe sentence.

The only remaining question is whether the breach "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* This court has held that "violations of the plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government . . . ." *Id.* at 648 (quoting *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir.1997) (quotation marks omitted)). The breach of the plea agreement in the present case, moreover, particularly affected the fairness of the proceedings because Tuimala's sentence was increased as a direct result. We therefore conclude that plain error occurred.

### D.  Tuimala's sentence enhancement for a leadership role

The district court imposed a two-level sentence enhancement, pursuant to United States Sentencing Guidelines § 3B1.1, for Tuimala's alleged leadership role in the offense. "The proper standard of review to employ in evaluating the district court's imposition of this enhancement is subject to some debate." *United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004). Prior to 2001, this court "reviewed a district court's factual findings for clear error and legal conclusions de novo." *United States v. Solorio*, 337 F.3d 580, 600 (6th Cir.2003). Then, in *Buford v. United States*, 532 U.S. 59, 66 (2001), the Supreme Court held that a district court's application of the guidelines' section there under consideration should be reviewed deferentially rather than de novo "in light of the fact-bound nature of the legal decision."

This court has not yet decided on the appropriate standard of review of a § 3B1.1 enhancement in any post-*Buford* case. *See Henley*, 360 F.3d at 516 (declining to decide whether the enhancement should be reviewed deferentially or de novo because the court would have affirmed the district court under either standard).  In the present case, we again have no need to decide which standard of review applies because the district court's decision was incorrect under either standard.

This court has held that a sentence enhancement is appropriate under § 3B1.1 where a defendant has "exerted control over at least one individual within a criminal organization," but not where the defendant has "merely exercised control over the property, assets or activities of the enterprise." *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997).  In the present case, the record at most demonstrates only that Tuimala sold drugs to multiple individuals.  He had no control over what they did with the drugs after the purchases.  This does not meet the degree of control required by *Gort-DiDonato*. On remand, therefore, the

district court should resentence Tuimala without applying the leadership enhancement.

## II.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Swanberg's sentence but **VACATE** Tuimala's sentence and **REMAND** his case for the limited purpose of resentencing without the sentence enhancement.