**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0059n.06

No. 09-4266

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 17, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Northern |
| | ) | District of Ohio |
| DELTONIO L. DORSEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:      BOGGS and MCKEAGUE, Circuit Judges; and GOLDSMITH, District Judge.[*]

BOGGS, Circuit Judge.  This appeal presents two issues: whether Dorsey's plea agreement was made "knowingly and voluntarily," and whether Dorsey waived the right to challenge his sentence—which was within the Guideline range—under the plea agreement.  The answer to both questions is yes.  The judge provided a comprehensive plea colloquy, where Dorsey stated numerous times that he understood his rights and had no questions. Further, the plea agreement prohibited an appeal of a within-guidelines sentence.  The sentence was within Guidelines, and thus cannot be appealed.

**I**

---

[*]The Honorable Mark A. Goldsmith, United States District Judge for the Eastern District of Michigan, sitting by designation.

Deltonio L. Dorsey, a convicted felon, was arrested by the Warren Police Department for possession of a revolver with five rounds of ammunition. Dorsey was indicted in the Northern District of Ohio for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). During the change of plea hearing, the district court reviewed the plea agreement with Dorsey in great detail. After the judge explained his rights to Dorsey, Dorsey indicated he had no questions about the waiver of his "constitutional trial rights," the nature of the charge, the maximum penalties—including a sentence of up to 10 years and three years of supervised release. Further, Judge Christopher A. Boyko told Dorsey that he could not "withdraw [his] plea of guilt[y]" even if the sentence handed down "is different from what is recommended here" or if he was "dissatisfied with" it.

The court walked Dorsey through the section in the plea agreement on "cooperation" in what Judge Boyko described as a "pretty detailed" fashion. First, the court stressed that Dorsey must "fully cooperate" "a hundred percent," not "70%, 80 or 90." After explaining the importance of being truthful and completely honest with the United States Attorney, the court turned to the government's side of the agreement. First, Judge Boyko explained that in "consideration of what [Dorsey] promised, the government agrees not to use any of your information or testimony against you except, of course, for the perjury and obstruction." Second, Judge Boyko warned that "[i]f you do fully cooperate, the government . . . at the time of sentencing, could move that I reduce your offense level by one level to credit you for substantial assistance." Third, Judge Boyko noted that if he were to reduce the offense level by one level, then the "adjusted offense level [would be] 20." Fourth, the court admonished Dorsey that if he "d[id] not fully cooperate as required under this plea

agreement, the government is released from its obligations, including any recommendation to lower your offense level, and [you will] have no right to withdraw your plea of guilt." Judge Boyko noted that he "normally follow[s]" the recommendation of the plea agreement. The court asked whether Dorsey understood each point and he answered affirmatively, stating that he understood his rights.

With respect to his rights on appeal, referring to Paragraph 19—labeled "Waiver of appeal, defenses, and collateral attack rights"—the court told Dorsey in no uncertain terms "that fancy language means that you are giving up rights of appeal unless you specifically reserve them in this plea agreement." Judge Boyko asked, do "[y]ou understand that, Mr. Dorsey?" Mr. Dorsey said he understood not once, but twice, answering "Yes. Yes."

After explaining the waiver of appellate rights, the court listed the exceptions under which Dorsey could appeal—if the "sentence [] exceeds, goes above, the Guideline range," if "there's been ineffective assistance of counsel or prosecutorial misconduct," and if the court does "not go along with the recommendations of this plea agreement." The court warned that, for "[e]verything else you are waiving or giving up" your appellate rights. With respect to paragraph 19, and the waiver of his appellate rights, Mr. Dorsey had no questions.

Dorsey also indicated that he had had "sufficient time to sit down with Mr. Palombaro [his attorney] and go over everything." After Judge Boyko asked if Dorsey had any further questions, he turned to Palombaro, and asked if Dorsey "enter[ed] into this plea knowingly, intelligently, and voluntarily." Palombaro answered affirmatively. Finally, the court asked Dorsey, "As to Count 1 of the indictment which charges you with being a felon in possession of ammunition, a violation of Title 18, Section 922(g)(1), United States Code, to that charge how do you plead?" Dorsey

answered, "Guilty." With that plea—the culmination of the comprehensive colloquy—Judge Boyko found that "the defendant has *knowingly, voluntarily, and intelligently* entered his plea with a full understanding of his constitutional rights, full understanding of the plea agreement." The court further found "a substantial factual basis to support the elements of the charge beyond a reasonable doubt." Finally, the court "accept[ed] his plea of guilt" and signed the plea agreement.

The district court sentenced Dorsey to a term of imprisonment of 77 months, to be followed by three years of supervised release. Dorsey now challenges his guilty plea, and his sentence.

**II**

Dorsey argues that his plea was not knowing, intelligent, and voluntary. As such, the district court erred when it accepted the plea. This argument is without merit. "The issue of whether a plea was knowing, voluntary, and intelligent is a legal question that this Court reviews *de novo*." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (quoting *United States v. Jones*, 403 F.3d 817, 822-23 (6th Cir. 2005)).

Dorsey contends that he did not understand his plea agreement, particularly its waiver of appeal and cooperation provisions. The record does not support these claims. Judge Boyko should be commended for walking Dorsey through the colloquy carefully and thoroughly. At each step, the court asked whether Dorsey fully understood and had any questions. At each stage, Dorsey indicated that he agreed, and had no questions. The court also elicited from Dorsey's counsel a statement that the plea was "knowing, intelligent, and voluntary." Acceptance of Dorsey's plea does not constitute reversible error.

Defendant puts forth three somewhat-related arguments. First, Dorsey now claims that when he entered the plea, he was under the impression that his cooperation would result in a downward departure, rather than a one-level reduction to his adjusted offense level. The court spent some time explaining how the cooperation provisions would work, noting that Dorsey might receive a one-level reduction if he cooperated fully with the United States. There was absolutely nothing in the colloquy to suggest that he would receive a downward departure in light of any cooperation he provided. If, for whatever reason, Dorsey was under the impression that he would receive a downward departure, the time to raise that objection was at the colloquy, during the numerous occasions when Judge Boyko asked Dorsey and his attorney if they had any questions. Neither Dorsey, nor his counsel, made any such inquiry.

Second, Dorsey now asserts that at the time of the plea, he did not understand the waiver of his appellate rights. Judge Boyko asked a number of questions about the waiver of his appellate rights, explained what legal terms like "waiver" and "collateral attack" meant, and itemized the exceptions to the plea agreement where an appeal would be proper. Dorsey had no questions, and stated that he fully agreed with the agreement. Dorsey knowingly, voluntarily, and intelligently waived his appellate rights.

Third, Dorsey now claims that his "low cognitive level" contributed to his inability to understand the plea. To support this assertion, Dorsey cites the presentence report's statements that he "was diagnosed with Attention Deficit Disorder when he was 10 years old," that he was in "learning disabled classes from grades 9 through 11," that a 1998 Multifactored Evaluation found that Dorsey's "level of intellectual functioning was in the borderline range with significantly stronger

performance skills than verbal abilities," and that he had deficits in "communication and socialization skills." First, we note that the presentence report was prepared *after* the change of plea colloquy, and there was no way for Judge Boyko to consider these statements prior to accepting the plea. Further, this court has held that allegations of mere "mental difficulties cannot show that [the defendant] did not understand the rights he was waiving," *United States v. Taylor*, 281 F. App'x 467, 471 (6th Cir. 2008) (unpublished), as they do not "'indicate[] that [the defendant] was mentally incapable of understanding, appreciating, and waiving his constitutional rights . . . .'" *Ibid.* (citing and quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 637 (6th Cir. 2008)).

The statements in the presentence report, even if accepted as true, when read in light of Dorsey's conduct at the sentencing hearing, would not show that he was "mentally incapable of understanding, appreciating, and waiving his constitutional rights." *Ibid.* Dorsey, with the aid of his counsel, had every opportunity to inform the court of his aptitude, to request additional information or clarification, and even seek special testing or counseling prior to entering a plea of guilty to ensure that he was acting knowingly, intelligently, and voluntarily. Dorsey took no such steps. The court did not err in accepting Dorsey's guilty plea.

**III**

We "review[] the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*." *United States v. Swanberg*, 370 F.3d 622, 626 (2004) (quoting *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003)). This court has found that "[c]riminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily." *Swanberg*, 370 F.3d at 625. Indeed, it is "well settled that a defendant

in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. McGilvery*, 403 F.3d 361, 362 (2005) (internal punctuation and citation omitted). Plea agreements may also "waive constitutional or statutory rights then in existence, as well as those that courts may recognize in the future." *United States v. Wilson*, 438 F.3d 672, 673 (6th Cir. 2006) (citing *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005)). Dorsey's "willingness to be sentenced under the Guidelines and generally to waive his right to appeal binds him no less now than it did when he signed the agreement." *Bradley*, 400 F.3d at 466.

The court highlighted three instances where Dorsey could appeal his sentence—if the "sentence [] exceeds, goes above, the Guideline range," if "there's been ineffective assistance of counsel or prosecutorial misconduct," and if the court does "not go along with the recommendations of this plea agreement." First, the sentence did not exceed the Guideline range. The sentence of 77 months is within the Guideline range of 70-87 months, and below the statutory maximum of 120 months. Second, there have been no allegations of ineffective assistance of counsel or prosecutorial misconduct. Third, the court abided by the recommendations in the plea agreement during sentencing.

As Judge Boyko told Dorsey, beyond these three exceptions, for "[e]verything else you are waiving or giving up" your right to appeal. Indeed. Because Dorsey's within-Guidelines sentence did not fall into one of the exceptions that permitted an appeal, the judgment below must stand.

**IV**

The district court's judgment of conviction is affirmed, and the appeal from the sentence is dismissed.