**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0231n.06

Case No. 13-1882

**FILED**
*Mar 27, 2014*
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| DEMANUAL PORTER, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

O P I N I O N

BEFORE:     COLE and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

COLE, Circuit Judge.  Demanual Porter appeals his 100-month prison sentence.  Porter pleaded guilty to two counts of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  The district court sentenced him to a within-Guidelines prison term of 100 months based on a finding that Porter had distributed in excess of 54 grams of cocaine base.  On appeal, Porter argues that the district court's drug-quantity finding was erroneous because it was based, in part, on the uncorroborated statements of a purportedly untrustworthy informant.  Because the district court did not clearly err in its drug-quantity determination, we affirm Porter's sentence.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.  BACKGROUND

On February 14, 2012, Lansing Police officers arrested Willie Glass after he completed a drug transaction in a public parking lot.  Police caught Glass holding 28.35 grams of crack cocaine, which he stated he acquired from his longtime dealer, Demanual Porter.  Authorities then arranged for Glass to participate in a series of "controlled buys" from Porter.  During these controlled buys, Glass would pay Porter cash for the crack cocaine that Porter had previously fronted, and Porter would provide Glass additional quantities of drugs for resale.

On February 19, Glass met with Porter for the first controlled buy and paid him $1,000 for the 28.35 grams of crack cocaine for which Glass was initially arrested.  During the same buy, Porter fronted Glass an additional 5.41 grams of crack cocaine to sell.  Four days later, Glass met with Porter for a second controlled buy, during which Glass paid for the 5.41 grams he was previously fronted.  At that buy, Porter provided Glass an additional 20.95 grams to sell.  Police recorded both buys on video.

Porter was indicted for and pleaded guilty to two counts of distribution of cocaine base.  At sentencing, the government urged the court to attribute at least 54.71 grams of crack cocaine to Porter—28.35 grams found on Glass when he was initially arrested plus an additional 26.36 grams that Porter provided Glass during the two controlled buys.  But Porter argued that the court should attribute to him only the amounts exchanged during the controlled buys.  Porter's attorney questioned the reliability of Glass's statements regarding the source of the initial 28.35 grams given some confusion as to the timing of Glass's initial arrest when compared to the sequence of events surrounding the controlled buys.

The district court rejected Porter's arguments regarding Glass's credibility and the timing of his arrest. Based on the uncontroverted testimony of two Lansing police officers as well as the prior history between Glass and Porter, the court concluded that Glass was credible and that Porter had in fact distributed at least 54 grams of crack cocaine during the relevant timeframe. Accordingly, the court overruled Porter's drug-quantity objection. The court then calculated a base offense level of 26, applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a drug premises, and determined that Porter had a criminal history category of II. These calculations resulted in a Guidelines range of 87 to 108 months of imprisonment. The court ultimately imposed a 100-month sentence, from which Porter timely appealed.

## II. ANALYSIS

We review a district court's drug-quantity finding for clear error. *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004). For sentencing purposes, the government need only establish a drug quantity by a preponderance of the evidence, *id.*, and the district court's finding "may be based upon physical evidence (such as seized drugs) or testimonial evidence," *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). We have held time and again that "[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *Swanberg*, 370 F.3d at 625 (internal quotation marks omitted). In that context, we afford "great deference" to the district court's credibility determinations. *See United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007). Under this deferential standard of review, "[c]lear error will not be found where two permissible views of the evidence exist, and a district court's approximation of drug quantity is not clearly erroneous if it is supported by competent evidence in the record." *Jeross*, 521 F.3d at 570 (citations omitted).

## A.  Sentencing Guidelines and Their Implication

The Sentencing Guidelines provide different offense levels depending on the quantity of cocaine base distributed.  U.S.S.G. § 2D1.1(c).  Here, the pertinent cutoff was 28 grams.  *Id.* § 2D1.1(c)(7)-(c)(8).  Porter argues that he was responsible for the 26.36 grams he was caught distributing during the controlled buys, but nothing more.  Accordingly, he argues the district court should have set his base offense level at 24 under § 2D1.1(c)(8).  The district court determined, based on Glass's statements to the police and other circumstantial evidence, that Porter was responsible for distributing *at least* 28.35 additional grams of cocaine base—namely, the crack found on Glass's person during his February 14 arrest.  Therefore, the court set Porter's base offense level at 26 under § 2D1.1(c)(7).  This determination resulted in an advisory sentencing range of 87 to 108 months, as opposed to 70 to 80 months.

## B.  Porter's Arguments on Appeal

Porter contends that the district court's drug-quantity finding and resultant use of a higher sentencing range constituted "significant procedural error."  But Porter offers threadbare support for this allegation.  Accordingly, his appeal falls short.

Porter first argues that an apparent clerical error in the police file detailing his activities, which was later incorporated into the Presentence Investigation Report ("PSR"), undermines Glass's credibility.  That clerical error suggests that Glass was arrested with the additional 28.35 grams of crack cocaine *in between the two controlled buys*, as opposed to beforehand.  Porter contends that Glass was engaged in "extra-curricular drug dealing" when he was arrested on February 14, and that by claiming he had obtained the drugs from Porter, Glass was protecting himself from additional criminal charges.  This, Porter argues, calls into question Glass's credibility.

Relatedly, Porter argues that the district court should have discredited Glass's account of events because the government presented no corroborating evidence showing Porter was the source of the 28.35 grams found on Glass's person. Taken together, Porter argues the record does not support a conclusion that he was responsible for more than 26.26 grams of cocaine base.

There are several problems with Porter's arguments. First, two Lansing police officers responsible for the investigation into Porter's drug dealing testified under oath as to the sequence of events and confirmed that both controlled buys came *after* Glass's initial arrest, not prior. Both officers testified that the events unfolded in the following sequence:

> February 14: Glass was arrested with 28.35 grams of crack cocaine that he asserted he obtained from Porter.
>
> February 19: Glass purchased 5.41 grams of crack cocaine from Porter during the first controlled buy.
>
> February 23: Glass purchased 20.95 grams of crack cocaine from Porter during the second controlled buy.

Based on this uncontroverted testimony, the district court was justified in rejecting Porter's allegation that Glass was engaged in "extra-curricular drug dealing" when he was arrested on February 14. This, in turn, undercuts Porter's principle contention that Glass had a motive to lie regarding the source of the 28.35 grams of crack cocaine in question.

Second, the district court heard testimony from the officers as to why Glass's assertions about Porter were credible. Officer Guerra, who oversaw both controlled buys, explained that Glass and Porter "dealt [drugs] all the time[,]" had established routine procedures for the fronting and repayment of drug purchases, and appeared to trust one another. Officer Guerra also explained that he found Glass's statement credible because Glass followed through with what he said he would do during each of the controlled buys.

Given the evidence presented to the district court—including a particularized course-of-dealing between Glass and Porter, the true sequence of events surrounding Glass's arrest and the controlled buys, Glass's statement that the 28.35 grams of crack cocaine came from Porter, Officer Guerra's testimony that Glass was a credible informant, and the total lack of evidence to the contrary—we see no error (let alone clear error) in the district court's drug-quantity finding. If Porter had evidence showing he was not the true source of the drugs in question, he should have presented it during his sentencing hearing. Merely stacking one credibility inference on top of an unfounded allegation will not suffice.

Where, as here, "there were two permissible views of the evidence," the district court did not err in choosing to credit Glass's statements. *See United States v. Kelley*, 459 F. App'x 527, 534 (6th Cir. 2012). Moreover, there was "competent evidence in the record" to support the court's finding that Porter was responsible for distributing over 28 grams of cocaine base. *See Jeross*, 521 F.3d at 570. Accordingly, the district court's drug-quantity finding and subsequent application of the base offense level from U.S.S.G. § 2D1.1(c)(7) were not clear error.

### III.  CONCLUSION

For the foregoing reasons, we affirm the district court's imposition of a 100-month prison sentence.