NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0199n.06

No. 22-3263

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 03, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| COREY GOINGS, | ) ) | |
|     Defendant-Appellant. | ) ) | OPINION |

Before: GIBBONS, BUSH, and LARSEN, Circuit Judges.

JOHN K. BUSH, Circuit Judge. As part of a plea deal with the government, Corey Goings agreed to waive his right to appeal his conviction and sentence with few exceptions. Yet Goings appealed his sentence after the district court imposed a substantial fine. Because the appeal waiver applies here, we dismiss Goings's appeal.

**I.**

In 2019, Goings was arrested and indicted on three charges: conspiracy with intent to distribute a controlled substance, possession of a firearm by a convicted felon, and possession with intent to distribute a controlled substance. He pleaded guilty to the third charge. Goings's plea agreement included an appeal waiver, which provided that he "expressly and voluntarily waive[d]" his right to appeal his "conviction or sentence," save for his right to appeal "(a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the [U.S. Sentencing] Guidelines sentencing range, using the Criminal History Category found applicable by the Court; or (c) the Court's determination of Defendant's Criminal History

Category." Plea Agreement, R. 708, PageID 4893. The appeal waiver also excepted ineffective assistance of counsel and prosecutorial misconduct claims.

At Goings's change of plea hearing, the district court confirmed with Goings that he had read his plea agreement, reviewed it with his attorney, and understood it. The district court also confirmed that no one threatened Goings into pleading guilty and that he was competent to enter a plea. The district court reminded Goings that, among the many consequences of pleading guilty, he would have only "a very limited opportunity to appeal." Change of Plea Hr'g Tr., R. 988, PageID 8416. Goings acknowledged that he understood that his right to appeal would be limited to the specific exceptions stated in his plea agreement. *Id.* at PageID 8423–24. After the government summarized the minimum and maximum possible punishments, including a "maximum statutory fine [of] $5 million," Goings also acknowledged that he understood that the district court could not "exceed the maximum potential penalty" in sentencing him. *Id.* at PageID 8424–25. The Presentence Report (PSR) calculated a Guidelines fine range of $20,000 to $5 million. Although Goings objected to the imposition of a fine, he did not object to the calculated range.

Before sentencing, Goings asked the district court to consider "racial biases in incarceration rates" for Black defendants, "the long-term detriment it works upon these communities," and that he "worked positively to impact his community" in calculating his sentence. Goings Reply (SEALED), R. 890, PageID 6985. Goings also submitted many letters of support, which conveyed his contributions to his community. And at sentencing, Goings claimed that "we all know that black people, they get charged for anything four or five times greater more than Hispanics do." Sentencing Tr., R. 989, PageID 8474–75.

After Goings's allocution, the district court sentenced him to a mandatory minimum sentence of 60 months' imprisonment and imposed a $40,000 fine, less than the $50,000 requested by the government. The district court explained in detail the basis for its decision, including the conflicting accounts of Goings's effect on his community, as shown through the PSR and letters of support. The district court concluded this extensive explanation with an additional note, worth quoting in full here:

> But let me say one final thing. I realize, and I'm giving you credit in my sentencing decision and otherwise, the positive work you did in your community. But the simple fact that you were about to undercut that work -- in fact, the mere acquisition of that cocaine undercut it entirely.

> But you know better than I. You spoke about your incredibly brutal and difficult upbringing. And the fact that you got a college degree in itself is remarkable and a remarkable commentary.

> But you know perhaps better than anybody what cocaine has done primarily to the African-American community and what heroin and fentanyl are doing today. It was a betrayal of your own community for you to purchase that, and, of course, ultimately to see to it that it got distributed probably, not exclusively perhaps, but substantially, to feed the addictions of those in your own community whose lives that addiction has ruined. And you know probably as well as anybody that addiction doesn't have one victim. Its victims multiply and members of the victim's family, the victims of the crimes that the addict/victims have to commit, often predominantly in the black community, to purchase that cocaine to feed their addiction, the guns that so many people get because they think they need protection, and the homicides, already 70 this year in Toledo alone -- the highest rate ever -- and it all goes back in my view, not entirely, but to a vast degree, to the drug plague that has been infesting the black community. And for whatever reason, whatever justification, the fact is that nothing can justify what you intended to do, which was to feed that addiction and help that plague spread.

> And that's the basis for my sentence. It is to deter you in the future, and to acknowledge the social harm that you did and to which you contributed, and also to deter the public.

> I realize that the fine is substantial. I simply don't credit, to the degree I wish I could and you wish I would, your account of your various financial resources and your various financial transactions. There's too much missing. There's too much I have to rely upon your own credibility.

3

So for that reason, I hope that those whom might come to understand these proceedings and the ultimate sentence and basis would find that it is a just sentence. I believe that it is, and I would hope that it enhances respect for the law. But I look carefully -- as I say, [the government] looks through one lens, I look through another when they assess your criminal history. They both combine to satisfy me that on their own and certainly jointly that your criminal history category was understated.

You've done much good, but also you, at the very least, intended to do a great deal of harm, and that's what prevails over anything else I've considered this afternoon.

*Id.* at PageID 8498–8500.

After Goings appealed the district court's imposition of the fine, the government moved to dismiss his appeal pursuant to the appeal waiver.

**II.**

Goings argues that he did not waive his right to appeal his fine because the plea agreement is ambiguous as to the imposition of a fine and because his fine was based, in part, on the district court's improper consideration of his race. "Criminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily." *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004). We assess "whether a defendant waived his right to appeal his sentence in a valid plea agreement de novo." *Id.* at 626 (internal quotation marks and citation omitted). And, notwithstanding an appeal waiver, we may review a defendant's sentence if "the sentence imposed is based on racial discrimination." *United States v. Ferguson*, 669 F.3d 756, 764 (6th Cir. 2012).

Neither of Goings's objections to his appeal waiver has merit. First, the appeal waiver unambiguously precludes challenges to the imposition of a fine. The waiver, by its plain terms, bars all appeals except those made on bases that Goings does not raise here. Goings contends that the plea agreement was ambiguous as to the imposition of a fine because it refers to a fine only in

4

passing. But Goings's plea agreement and change of plea hearing put him on notice that the district court could impose a fine as part of its sentence.[1] *See United States v. Aiad-Toss*, No. 21-3548, 2022 WL 374283, at *1–4 (6th Cir. Feb. 8, 2022) (enforcing an appeal waiver against a challenge to the imposition of a fine when the plea agreement and change of plea hearing both described the statutory maximum fine).

Second, the district court did not base its decision to impose the fine on race. While a "defendant's race . . . may play no adverse role in the administration of justice, including at sentencing," reference to the defendant's race will not invalidate the sentence if "when the record is viewed in its entirety, a reasonable observer would not conclude that [the defendant's race] affected his sentence." *United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017) (cleaned up) (affirming the defendant's sentence where, although the district court made some comments "in its colloquy with government and defense counsel that might raise the eyebrows of a reasonable observer" regarding the defendant's national origin, the court explicitly relied on permissible bases for its sentence to reflect "the need 'to protect the public from further crimes of the defendant'" (quoting 18 U.S.C. § 3553(a)(2)(C))).

Before sentencing, Goings asked the court to consider his race to impose a lesser sentence, solicited letters of support asking the court to consider his contributions to his community, and challenged the legitimacy of the sentencing proceedings by claiming that the government treats

---

[1] Goings points to *United States v. Fowler* to support his argument that his appeal waiver does not apply here, but *Fowler* cuts the other way: there, we declined to enforce an appeal waiver against a challenge to a special assessment imposed at sentencing, because "[w]hile the language of the agreement [there was] broad, the parties agree[d] that the special assessment was not mentioned in the plea agreement. In fact, during the plea colloquy, the government admitted that there was no mention of the $5,000 special assessment in the plea agreement." 956 F.3d 431, 437 (6th Cir. 2020). Here, by contrast, the possibility that the district court could impose a fine as part of Goings's sentence was raised in both the plea agreement and plea colloquy.

Black defendants worse than Hispanics with respect to charging decisions. During the sentencing hearing, the district court also raised Goings's race: according to the district court, despite "the positive work [Goings] did in [his] community," his crime "undercut that work," because Goings knew "perhaps better than anybody what cocaine has done primarily to the African-American community." Sentencing Tr., R. 989, PageID 8498. Ultimately, the district court explained that it would impose the "substantial" fine "to deter [Goings] in the future, and to acknowledge the social harm that [he] did and to which [he] contributed, and also to deter the public." *Id.* at PageID 8499.

Evaluating these remarks in full and in context makes clear that the district court merely responded to Goings's extensive prior references to his race—it in no way based Goings's fine on his race. And because the court sentenced Goings to the mandatory minimum term of imprisonment, Goings's race did not affect his sentence. In these circumstances, Goings may not overcome his appeal waiver to challenge the fine.

**III.**

Because the appeal waiver in Goings's plea agreement precludes us from considering the challenges that he raises here, we dismiss Goings's appeal.