*0RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0369p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

No. 05-6414

ALICE JONES,

> *Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 04-00074—Danny C. Reeves, District Judge.

Argued: March 5, 2007

Decided and Filed: September 11, 2007

Before: BATCHELDER and MOORE, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Willis G. Coffey, COFFEY & FORD, Mt. Vernon, Kentucky, for Appellant. Andrew Sparks, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Willis G. Coffey, COFFEY & FORD, Mt. Vernon, Kentucky, for Appellant. Andrew Sparks, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

---

## OPINION

---

RICHARD MILLS, District Judge. Alice Jones appeals the district court's judgment of forfeiture as to real property and a mobile home that she owned with her husband.

Because we conclude the Government did not establish that there was a nexus between Jones's criminal activity and the property *after* she acquired title, we must **reverse**.

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

1

## I. FACTUAL BACKGROUND

On October 7, 2004, Alice Jones ("Jones") and her husband Woodrow Jones were named in a three-count indictment: Count *one* charged they conspired with others to distribute and possess with the intent to distribute ninety grams or more of marijuana in violation of 21 U.S.C. § 846; Count *two* charged they conspired with others to transport funds and engage in financial and monetary transactions in criminally derived property of a value greater than $10,000 under 18 U.S.C. § 1956(h); and Count *three* sought forfeiture, pursuant to 21 U.S.C. § 853, of the Jones's 3.2 acres of real property located in Laurel County, Kentucky.

On November 30, 2004, both Defendants pled guilty to counts one and two. In the plea agreement, the parties agreed to the following factual statement regarding Jones's criminal conduct:

> (a) That beginning in early 2003, the exact date unknown, Woodrow and Alice Jones entered into a conspiracy with Benny Neeley and others to distribute marijuana in the Eastern District of Kentucky (EDKY). At the direction of Benny Neeley, Woodrow and Alice Jones did [on] several occasions send United States currency by way of Western Union.
>
> (b) Woodrow and Alice Jones were delivered and did receive at their residence quantities of marijuana by way of UPS for Benny Neeley. Specifically, on September 24, 2003, UPS records indicate that a package was shipped from Brownsville, Texas to their residence weighing approximately 50 pounds. These package [sic] was known by the defendants to contain marijuana. When the package was received at their residence, Benny Neeley was contacted and he or someone at his direction picked up their package from this defendant.
>
> (c) On February 3, 2003[1], Woodrow and Alice Jones were interviewed and admitted to sending United States currency via Western Union at the direction of Benny Neeley. They further admitted to receiving packages at their residence.

Jones's plea agreement specifically reserved the issue of contesting the forfeiture of the real property set out in count three of the Indictment.

On March 28, 2005, Jones was sentenced to eighteen months' imprisonment on counts one and two to be served concurrently. Woodrow Jones was sentenced to seventy months' imprisonment on each count to be served concurrently.

On April 7, 2005, the Government filed a motion for a preliminary order of forfeiture wherein it requested the forfeiture of the Defendants' property "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission" of a drug trafficking offense. In the motion the Government alleged: "Packages were received by the defendants at their residence over a period of approximately fourteen months." The district court held an evidentiary hearing on July 20, 2005. The Government's only witness at the hearing was DEA agent Jerel Hughes. Agent Hughes testified that he was able to verify only one package of marijuana that was delivered to the residence at 1417 Rooks Road. This was the September 24, 2003, package of marijuana described in the plea agreement, about which Agent Hughes said: "That was the only one that I was able to find a definitive record of." He described the mobile home in the following manner: "It's a single-wide mobile home, older, it has underskirting, it has a permanently affixed rear deck, a wooden deck, it has a swimming pool out back."

---

[1]Presumably, the Joneses were actually interviewed on February 3, 2004.

Jones testified on her own behalf and also called her mother, Virginia Faye Clark, and Colleen Sue Horne as witnesses. Jones stated that she had purchased the mobile home from her brother approximately fifteen years earlier. She lived in the mobile home at 31 Bentley Road before moving it to the current location on the subject property at 1417 Rooks Road. Each time she relocated she moved the mobile home by towing it with a trailer. According to Jones, there was nothing about the mobile home's condition that would prevent her from moving it again. Jones further said that the wooden deck referenced by Agent Hughes is connected by two posts to the mobile home that are detachable and constructed to be easily moved.

Virginia Clark testified that she and her husband gave the real estate to the Joneses as a wedding gift. The deed transferring the property is dated November 5, 2003, which was two days after the couple was married. Jones had lived at the property since late 2001. Mrs. Clark said that she and her husband had given all of their children property and they were unaware of any criminal activity occurring on the property at issue in this case. Jones sold one-half acre of the real property to Colleen Horne and Norman Clark in March 2004, but did not transfer title of the property to Horne or Clark. Mrs. Horne testified she was not aware of any criminal activity when she and Norman Clark bought the property. However, the Government notes Agent Hughes interviewed Horne on December 30, 2003. Agent Hughes said that Horne informed him that the Joneses were selling oxycontin from their home.

Agent Hughes met with Jones and her husband in March 2004. He determined that the conspiracy involved at least 62 people in several states. Agent Hughes also said he believed that the Joneses received more than one package at their residence, and that the co-conspirators used UPS to transfer the marijuana to Kentucky. Agent Hughes testified that during the course of the conspiracy, the Joneses wire transferred no less than $30,000 and received at least one package of marijuana at their residence. Although the agent was unable to confirm additional shipments due to UPS's record keeping practices, he testified on the basis of his training and expertise and his investigation that the Joneses received several packages of marijuana at their residence. Alice Jones testified that no packages were delivered to her address after September 24, 2003. She also testified that she did not recall making any wire transfers or engaging in any other criminal activity after that date.

Benny Neeley, a co-conspirator who headed the Kentucky end of the organization, lived across the road from the Joneses. Agent Hughes testified that Neeley gave the Joneses money, which they transferred to a supplier in Texas. The Joneses received "a package or packages of marijuana" in return from the supplier that they distributed to Benny Neeley. The agent went on to say that he was able to find a definitive record of only the one package which was delivered on September 24, 2003. The co-conspirators also met at the Joneses' residence and planned the distribution of the marijuana. Agent Hughes did not know when these meetings occurred.

On August 21, 2005, the district court entered a preliminary judgment of forfeiture as to the Jones's real property and mobile home. Jones filed a timely notice of appeal on August 30, 2005.

## II. DISCUSSION

### A. Standard of Review

This court reviews the district court's interpretation of the federal forfeiture laws *de novo*. *United States v. O'Dell*, 247 F.3d 655, 679 (6th Cir. 2001). The Government must prove forfeiture by a preponderance of the evidence. *United States v. Hall*, 411 F.3d 651, 654-55 (6th Cir. 2005). Findings of fact are reviewed for clear error. The issue of whether those facts are sufficient to constitute a proper criminal forfeiture is reviewed de novo. *O'Dell*, 247 F.3d at 679.

**B. Forfeiture of Jones's real property**

A district court must order the forfeiture of a defendant's interest in property when a nexus is drawn between the defendant's criminal conduct and the property. *See* 21 U.S.C. § 853(a); Fed. R. Crim. P. 32.2(b)(1). This includes "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a)(2). Pursuant to 21 U.S.C. § 853(c), the Government is entitled to the forfeiture of property that Jones owned at the time the offense(s) occurred, not at the time of the conviction. *O'Dell*, 247 F.3d at 685. The Government can acquire through forfeiture no greater interest than that held by the defendant at the time the criminal acts were committed. *Id.*

The parties dispute whether Jones engaged in any criminal activity after she acquired title to the 3.2 acres described in count three. Jones alleges that her primary involvement in the conspiracy was the wiring of funds to individuals in the Brownsville, Texas area. The plea agreement referenced only one specific package of marijuana being delivered to the Jones's residence at 1417 Rooks Road. This was delivered on September 24, 2003, more than one month before Jones acquired title to the real property.

The Government claims it established by a preponderance of the evidence that Jones engaged in criminal activity on her property before and after she received title. Agent Hughes's investigation showed that marijuana and money were delivered to Jones at her home, that Jones wire transferred the money to a supplier in Texas, and that Jones met with co-conspirators at her home to plan the distribution of the marijuana. The Government does not provide dates for most of these occurrences.

Jones alleges that the district court erred in determining that she received "multiple shipments" of marijuana at their residence and that their property was used to facilitate other criminal acts occurring "both before and after they acquired title to the land." She claims that the district court apparently interpreted an ambiguity in the plea agreement to conclude that multiple shipments of marijuana were received at the property. Paragraph 4(b) of the plea agreement states that Jones received a "package" of marijuana on September 24, 2003, while paragraph 4(c) states that Jones received "packages" at their residence. Additionally, the district court found that because Jones was responsible for the distribution of 60 to 80 kilograms of marijuana as noted in the plea agreement, it would take three or four packages of fifty pounds to equal this amount. Jones asserts this reasoning ignores a couple of points. First, even if multiple packages were delivered to the Jones's residence, there is no evidence that they were received after November 5, 2003. Paragraph 4(c) says nothing about when these packages were delivered. Second, the distribution of 60 to 80 kilograms of marijuana as set out in the plea agreement does not necessarily mean this amount was delivered to the residence. It could include the Joneses' conduct of wiring sums of money to Texas via Western Union for the delivery of marijuana to other members of the conspiracy across Southeastern Kentucky.

Based on the foregoing, Jones claims the evidence does not support the finding that criminal activity occurred on the property on or after November 5, 2003. The presentence report stated that Jones wired money from July 31, 2003 through September 23, 2003. Agent Hughes also identified a wire transfer on October 6, 2003, which did not occur on the Jones's property. Jones contends that the Government is relying on nothing more than Agent Hughes's belief that criminal activity occurred on the property after title was acquired.

Agent Hughes stated that the Joneses "did not exit the conspiracy" after receiving title to the property. He testified, "I have no reason to believe that they didn't continue to distribute narcotics from that residence up until the point that we shut down the Kentucky end of the operation." Accordingly, the Government contends that the district court properly concluded that Jones received multiple shipments of marijuana at her home.

The evidence pertaining to criminal activity on the property after November 6, 2003 is based on nothing more than Agent Hughes's speculation. Based on the language in the plea agreement and the amount of drugs attributed to Jones, it might be reasonable to conclude that more than one package of marijuana was delivered to 1417 Rooks Road. However, there is no evidence that any deliveries to the property occurred after September 24, 2003. Moreover, there is no evidence of any wire transfers Jones made after October 6, 2003. The district court observed that "Agent Hughes offered additional testimony that wire transfers of money continued until at least January 2004." However, Agent Hughes went on to testify that the wire transfers in January 2004 did not involve Woodrow or Alice Jones.

The district court also relied on Agent Hughes's testimony that he had "no reason to believe" that the Joneses stopped distributing drugs from their residence "up until the point that we shut down the Kentucky end of the conspiracy [in March 2004]." The agent's testimony as to the Jones's continued involvement was based on purchases of narcotics that were made after this date, the results of the search warrants executed in connection with the case, and other people interviewed. Agent Hughes did not provide evidence linking the Joneses to those portions of the investigation or otherwise supported the Government's assertion that the Joneses were involved in the conspiracy until it ended. Although the district court noted that "Hughes [sic] testimony in this regard was not challenged or otherwise rebutted during cross-examination or by the presentation of other proof offered by the Defendants," it is the Government which bears the burden of proof in forfeiture actions. Because Agent Hughes failed to provide any evidence to support his belief that the Jones's involvement continued until the end of the overall conspiracy, there was nothing for Jones to challenge or rebut.

The district court determined that "significant criminal activity pertaining to the admitted conspiracy occurred before and after the Jones acquired the property in question." After reviewing the record, we conclude that any evidence of criminal activity on the property after Jones acquired title is based almost entirely on Agent Hughes's speculation.[2] "[T]he government takes the forfeited property that was in the hands of the defendant at the time of the offense, not at the time of conviction." *O'Dell*, 247 F.3d at 685. Although it might be reasonable to infer that the Joneses continued to engage in criminal activity after they acquired title to the property, there is no legitimate evidence that any criminal activity occurred on the property after November 5, 2003. We conclude that something more than an agent's hunch is necessary in order for the Government to meet its burden of proof under 21 U.S.C. § 853.

Agent Hughes testified that the conspiracy continued until March 2004. Thus, the record supports the Government's assertion that criminal activity occurred after the Joneses received title to the property. Although there is no evidence establishing a nexus between Jones's real property and any criminal activity during this time period, we will briefly consider whether the property is subject to forfeiture based on the evidence that the overall conspiracy continued after title was acquired and Jones did not formally exit the conspiracy. We have not found any cases which address this specific issue. The relevant portion of the statute provides for the forfeiture of "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission" of a drug trafficking offense. *See* 21 U.S.C. § 853(a)(2). Given the personal nature of private property rights, we decline to hold that an individual's property is subject to forfeiture based on the criminal acts of others. The Government has failed to prove a connection between the "person's property" after November 5, 2003 and any crime for which Jones pled guilty.

---

[2]Agent Hughes did testify that Colleen Horne informed him that Jones and her husband sold oxycontin from their home after they acquired title to the property. However, the Joneses were not convicted of distributing oxycontin. Therefore, the property is not subject to forfeiture under 21 U.S.C. § 853(a) based on that alleged violation.

The district court erred in determining that the Government proved by a preponderance of the evidence that there was a nexus between the property at issue after Jones acquired title on November 5, 2003, and her criminal activity. Accordingly, we will reverse the judgment of forfeiture.

### C. Forfeiture of the mobile home

The Jones's mobile home is not listed in the indictment. The only property sought by the Government for forfeiture was the real property described in count three. "A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). Property that is subject to criminal forfeiture includes "real property, including things growing on, affixed to, and found in land." 21 U.S.C. § 853(b)(1). Therefore, the mobile home cannot be subject to forfeiture unless we conclude that it was "affixed to" real property that was subject to forfeiture. But, having already determined that Jones's real property was not subject to forfeiture, we must also conclude that the Government is not entitled to the forfeiture of their mobile home, even if we find it affixed to the real property. If we find the Jones's mobile home was not permanently affixed to the real property, the Government is not entitled to it because it was not listed in the indictment. We decline to consider whether the mobile home was affixed to the real property.

The district court's judgment of forfeiture is **reversed** and this case is **remanded** to the district court for further proceedings consistent with this opinion.