**NOT FOR FULL-TEXT PUBLICATION**
File Name: 10a0423n.06

No. 08-5712

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 13, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

COREY FERGUSON,

        Defendant-Appellant,

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

BEFORE: SUHRHEINRICH, COLE and GILMAN; Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** Defendant Corey Ferguson appeals his jury conviction and sentence for conspiracy and distribution of cocaine. He also appeals the forfeiture of $5,026.00 seized from his residence. We AFFIRM Ferguson's conviction and sentence, but REVERSE the order of forfeiture.

## I. Background

In 2003, the Bowling Green/Warren County Drug Task Force and Bureau of Alcohol, Tobacco, Firearms, and Explosives began investigating the Fadz 4 Days Barber Shop in the Bowling Green, Kentucky area for drug-trafficking activity. On May 3, 2006, Ferguson was indicted along with seven other individuals for various drug-trafficking offenses and a warrant for his arrest was issued. On July 12, 2006, the grand jury returned a superseding indictment charging Ferguson in three counts: (1) conspiracy to manufacture crack cocaine and to distribute powder and crack cocaine from June 1, 2003, to February 17, 2006, in violation of 21 U.S.C. § 846, and to knowingly

possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 1); (2) manufacturing crack cocaine between January 28, 2006, and February 8, 2006, in violation of 21 U.S.C. § 841(a)(1) (Count 17); and distributing powder cocaine on February 1, 2006, in violation of 21 U.S.C. § 841(a)(1) (Count 18). In addition, the Government sought forfeiture of certain items seized pursuant to 21 U.S.C. § 853 (Count 28).

Ferguson filed a motion to suppress the evidence seized from his home during the execution of a state search warrant. He also filed a motion in limine to exclude cash and marijuana seized from Ferguson's Mt. Lebanon Church Road residence. The district court granted in part and denied in part the motion to suppress, and denied the motion in limine. Ferguson was tried before a jury. The Government presented twelve witnesses, including codefendants Jerome Shanklin, the owner of the barber shop, Richard Cox, a barber in the shop, and William Downey, a cooperating individual. The district court submitted six special verdict forms concerning the offenses of conspiracy to manufacture crack cocaine, conspiracy to distribute powder cocaine, conspiracy to distribute marijuana, aiding and abetting in the distribution of crack cocaine, and aiding and abetting in the distribution of powder cocaine. The forfeiture count was not considered by the jury. The jury convicted Ferguson of conspiracy to distribute between 500 grams and five kilograms of powder cocaine pursuant to Count 1, and distribution of more than 500 grams of cocaine pursuant to Count 18. The jury acquitted him on Count 17. The district court denied his motion for judgment of acquittal or new trial.

Several months later, the prosecutor informed Ferguson's counsel that she recently learned that the Assistant United States Attorney (AUSA) formerly assigned to the case had made an offer of consideration for trial testimony to Downey. Ferguson filed another motion for a new trial as a

result. The district court denied the motion without a hearing, concluding that there was no reasonable probability that the outcome of the proceedings would have been different had Ferguson known of the offer.

Ferguson also moved for return of $5,026 seized from his residence pursuant to the search warrant. The district court denied the motion without a hearing and ordered the monies forfeited.

The presentence report calculated Ferguson's guidelines range at 360 months to life imprisonment. The district court reduced Ferguson's sentence to adjust for the disparity among his codefendants. After considering the 18 U.S.C. § 3553(a) factors, the court imposed a 300-month sentence.

This appeal follows.

## II. Analysis

### A. New Trial Motion

Ferguson argues that the district court erred in refusing to grant him a new trial pursuant to Fed. R. Crim. P. 33 based on the government's failure to disclose its cooperation agreement with Downey. This Court reviews the district court's decision to deny a motion for new trial based on newly discovered evidence or *Brady* violations for abuse of discretion. *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007).

*Brady v. Maryland* requires the government to turn over evidence favorable to the accused and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This includes evidence that could be used to impeach the credibility of a witness. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th Cir. 1999). Not every failure to disclose favorable evidence requires a new trial, however. *Schledwitz*, 169 F.3d at 1011.

Favorable evidence must be material, "and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). *See also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). This means that the defendant must show that the new evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. *See also Bell v. Bell*, 512 F.3d 223, 236-37 (6th Cir. 2008) (en banc) (same), *cert. denied*, 129 S. Ct. 114. In the context of impeachment evidence, "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' the nondisclosure of evidence affecting credibility falls within" the *Brady* rule requiring a new trial. *Giglio*, 405 U.S. at 154. The good faith or bad faith of the government is irrelevant in a *Brady* analysis. *Brady*, 373 U.S. at 87; *see also United States v. Agurs*, 427 U.S. 97, 110 (1976) ("Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor."); *White*, 492 F.3d at 409 ("It matters little whether the government suppresses the evidence out of oversight or guile.").

At trial, the Government introduced Downey's plea agreement, which explicitly stated that "[n]o other promises or inducements have been made" to Downey below the twenty-year minimum in exchange for his testimony against Ferguson. However, four months after his conviction, AUSA Jo Lawless, the trial prosecutor, sent Ferguson's counsel a letter disclosing for the first time that the former AUSA assigned to the case, Brian Butler, agreed to consider Downey for a sentence less than twenty years if he testified truthfully during any trial (the "cooperation agreement"). According to Lawless, Butler had also agreed to exclude the cooperation agreement from the written plea

agreement. Ferguson had requested such *Brady* material prior to trial. At Downey's sentencing, which was held after Ferguson's conviction, the Government moved to reduce Downey's sentence below twenty years consistent with the cooperation agreement, and the district court reduced Downey's sentence to eighteen years.

Downey testified at trial that nothing in the plea agreement promised him a sentence of less than twenty years. On cross-examination, Downey acknowledged that he was looking at a mandatory minimum of twenty years, but that he was testifying in hopes of getting a sentence below twenty years based on a U.S.S.G. § 5K1.1 reduction. On re-direct, Downey testified that the plea agreement contained no promise of a § 5K1.1 motion.

The cooperation agreement is inconsistent with the written plea agreement's statement that "[n]o other promises or inducements have been made to Defendant in connection with this case." The cooperation agreement therefore was impeachment evidence. However, Downey's reliability was not "determinative of guilt or innocence," so a new trial was not required under *Giglio*. Downey was only one of twelve government witnesses, six of whom testified concerning their knowledge of Ferguson's drug dealing. Although Downey testified that he was involved in two powder cocaine transactions with Ferguson in January 2006, Downey unlike several others, had no direct drug deals with Ferguson, but dealt only through a middleman.

On the other hand, Shanklin, who comes the closest to being characterized as a "key witness" in this case, testified that he received cocaine directly from Ferguson three times - - one half kilo and then one kilo in January, and another half kilo on February 1, 2006. The jury viewed videotapes and cellular telephone records that corroborated Shanklin's description of the February 1 incident. The jury found Ferguson guilty of Count 18 (the February 1, 2006 transaction) as well as the

-5-

conspiracy charge for that time period. Shanklin's testimony supports the jury's verdict here. *Cf. Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009) (holding that the state's failure to disclose in a murder trial three statements police made to its key witness, including a promise that he would be released if he implicated the defendant, was material under *Brady* where the witness "was the key witness for the prosecution" who gave an eyewitness account that was the only evidence that directly linked the defendant as the gunman); *see also id.* at 1034 (noting that "[c]onsiderable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness").

Ferguson also argues that the evidence in question could have been used to impeach Shanklin and Cox because all of the informant-witnesses entered into plea agreements containing the same language as paragraph 20 of Downey's plea agreement. This argument is unavailing because both Cox and Shanklin testified that the possibility of a § 5K1.1 motion appeared in their plea agreements. In short, the district court did not abuse its discretion in denying Ferguson's motion for a new trial based on the undisclosed impeachment evidence.

Ferguson also claims that a new trial is required because the Government knowingly relied on perjured testimony at trial. A relaxed standard applies in cases where the prosecution knowingly uses perjured testimony. *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986) (citing *Bagley*, 473 U.S. 667 at 678). In such a case, "the conviction will be set aside 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Id.* (quoting *Bagley*, 473 U.S. at 678).

But a new trial is not required under this standard either. As stated, Downey was not the key witness against Ferguson. *Cf. Giglio*, 405 U.S. at 154-55 (holding that a new trial was required after former AUSA failed to disclose to the trial prosecutor that he promised a key witness that the witness would not be prosecuted if he cooperated and the government's case depended almost entirely on that witness's testimony). As also stated above, Shanklin's, as well as Cox's testimony, easily supports the jury's verdict. Thus, it cannot be said that there was "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Rosencrantz v. Lafler*, 568 F.3d 577, 584, 589 (6th Cir. 2009) (internal quotation marks and citation omitted), (holding that the uncorrected false evidence by key prosecution witness denying pretrial meeting with the prosecutor would likely fail to "substantially influence" the jury verdict given witness's consistent identification of the defendant, and the impeachment evidence already in the record), *cert. denied*, 78 U.S.L.W. 3642 (U.S. May 3, 2010).

Nor is there any indication that AUSA Lawless knew of the promise to consider a departure at the time of trial such that it could be said she *knowingly* used perjured testimony. Indeed, it is she who brought the cooperation agreement to Ferguson's attention. *Cf. Napue v. Illinois*, 360 U.S. 264 (1959) (holding that where the murder prosecution against the petitioner was based principally on the testimony of a witness who falsely testified that he had received no promise of consideration in return for his testimony, and the prosecutor knew this but did nothing to correct it, a new trial was required because the jury's estimate of his testimony might have been determinative of guilt or innocence); *Schneider v. Estelle*, 552 F.2d 593 (5th Cir. 1977) (new trial required where the state's chief witness, a police officer, knowingly testified falsely at trial).

A hearing was not necessary. *United States v. White*, 492 F.3d 380 (6th Cir. 2007), does not support Ferguson. There, the defendants were deprived of a number of documents they alleged contained exculpatory information. *Id.* at 413. This court held that the defendants were entitled to an evidentiary hearing because "the supporting evidence detailed the government's rather great lengths to deny Defendants access to the requested documents," which "effectively foreclosed [the defendants] from making the requisite showing that the documents were material and favorable . . . and that the suppression prejudiced them." *Id.* By contrast, the trial prosecutor here, AUSA Lawless, disclosed the information as soon as she discovered it. *United States v. Frost*, 125 F.3d 346 (6th Cir. 1997), is equally distinguishable. There, we held that an evidentiary hearing was necessary because it was unclear from the record whether the testimony of a government expert who was not called could have established that the defendant, who had been charged with mail fraud in connection with an alleged scheme to defraud the government of tuition, actually engaged in common billing practices which would have negated an intent to defraud. *Id.* at 383-84. Here, no further inquiry was necessary because the Government disclosed the *Brady* material, and the district court was able to assess the impact of the violation on the jury verdict.

In sum, then, the district court did not abuse its discretion in denying Ferguson's motion for new trial or in denying his request for an evidentiary hearing.

## B. Motion to Suppress

Ferguson claims that the evidence obtained at the Mt. Lebanon Church Road address should have been suppressed because (1) there was no nexus between the address and the criminal activity to support probable cause for the search warrant, (2) the affidavit contained false statements, and (3)

the items taken outside the scope of the search warrant were not of an immediately apparent incriminating nature.

Detective Craig Sutter, an officer who was assigned to the drug task force involved in the investigation, stated in his affidavit in support of the application for the search warrant of the Mt. Lebanon Church Road residence that he and several officers arrived at 2946 Mt. Lebanon Church Road, Bowling Green, Kentucky, at approximately 8:30 a.m., on May 15, 2006, to execute a federal arrest warrant for Ferguson. Sutter knocked on the front door, but no one answered. Sutter heard music coming from the residence and saw someone peer through the blinds of a front window. Sutter also observed two pieces of mail bearing Ferguson's name in plain view inside a black Ford Explorer associated with Ferguson that was parked in the driveway. The officers waited approximately forty-five minutes before leaving.

The affidavit further stated that at about 10:10 a.m., dispatch received a phone call from Corey Ferguson's neighbor at 3013 Mt. Lebanon Road, and that "[t]his neighbor *advised that she saw Corey Ferguson* leave 2946 Mt. Lebanon Road in a red Dodge pickup truck that was towing a trailer." (Emphasis added.) Sutter attested that at 10:17 a.m. another trooper stopped the red pickup and that Corey Ferguson was in this vehicle. The trooper placed Ferguson under arrest, and during a search incident to arrest, the trooper found a 12 gauge shotgun shell in Ferguson's pants pocket. The affidavit noted that Ferguson was a convicted felon, and that the affiant knew Ferguson to be engaged in drug trafficking. Lastly, Sutter stated that based on his experience and training, he knew that drug traffickers are frequently armed and often maintain firearms in their homes.

A Kentucky state-court magistrate judge issued a search warrant for the Mt. Lebanon Road residence. It authorized the officers to seize "12 gauge shotgun shells, [a] 12 gauge shotgun, [and]

documentation regarding the purchase of a 12 gauge shotgun." While executing the search warrant, the officers seized $5,026 in cash, five shotgun shells, one baggie of marijuana, a safe deposit key, various documents, four rifle rounds of ammunition, four surveillance cameras, and a JVC television.

The district court concluded that the warrant was valid because "the discovery of Ferguson's illegal possession of ammunition minutes after leaving the residence at 2946 Mt. Lebanon Church Road established probable cause to believe that additional evidence of his possession of firearms or ammunition would be found in that residence."

"In reviewing a district court's denial of a motion to suppress evidence, this court reviews the district court's findings of fact for clear error, and its legal conclusions *de novo*." *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004). Any error is subject to harmless-error review. *United States v. Garcia*, 496 F.3d 495, 512 (6th Cir. 2007) (citing *Chapman v. California*, 386 U.S. 18, 22 (1967); Fed. R. Crim. P. 52(a)).

The district court's conclusion that the state search warrant was valid is problematic. First, as Ferguson points out, possession of ammunition by a felon is not in fact illegal under Kentucky law. Sutter conceded this at the suppression hearing. Yet the Government relies in its brief on Ferguson's "illegal possession of ammunition" in justifying the validity of the search warrant. Second, the neighbor did not actually identify Ferguson as the individual who left the Mt. Lebanon residence. Rather, the testimony at the suppression hearing revealed that the neighbor simply told the dispatcher that a black male entered a red pickup truck. Thus, Sutter's statement in the affidavit was not accurate. This inaccuracy is material because it was the key fact connecting Ferguson to the residence during the relevant time period, and therefore linking the shotgun shell to the suspected

-10-

possession of firearms in the residence. In addition, Sutter testified at the suppression hearing that he had not conducted surveillance on the Mt. Lebanon residence, and both he and Special Agent Hayes testified that they had no direct evidence that Ferguson was dealing drugs out of this residence. Sutter also stated that he had no information that Ferguson kept firearms in his home.

In short, the facts connecting criminal activity to the Mt. Lebanon Road residence are scant. Probable cause for the search could have been based only on the factual predicate that Ferguson left this residence and minutes later was found with a shotgun shell in his pocket. However, the affidavit did not conclusively establish that the black man that the neighbor saw leaving the Mt. Lebanon residence in a red truck was Ferguson.[1] Although law enforcement were probably justified in drawing the inference that the "black man" was indeed Ferguson, this inference should have been revealed to the magistrate judge so that the judge could make an independent determination of probable cause rather than merely rubber stamping the conclusions of Sutter.

Nevertheless, we need not decide whether the search warrant was valid. Given the overwhelming evidence of Ferguson's guilt on the cocaine charges, any error was harmless here. *See Garcia*, 496 F.3d at 512-13 (holding harmless erroneous admission of items not listed in search warrant whose illegality was not immediately apparent because of abundant evidence to convict defendant of drug trafficking conspiracy).

---

[1]Even if this proposition were conclusively established, it would not necessarily equal probable cause. *See United States v. McPhearson*, 469 F.3d 518, 524-25 (6th Cir. 2006) (rejecting the government's argument that the defendant's arrest outside his residence with drugs on his person was sufficient to establish probable cause because it assumed that the defendant was likely to have stored drugs in that same residence; additional facts were needed to support such an inference).

Concerning the items seized, the parties agree that the cash, the safe deposit key, the four surveillance cameras, and the JVC television were outside the scope of the search warrant.[2] The Government maintains that these items nonetheless were properly seized under the plain-view exception to the warrant requirement. "Seizing items beyond the scope of a warrant's authorization violates the Fourth Amendment rights of the subject of a search." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 554 (6th Cir. 2003) (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)). On the other hand, the plain-view doctrine "authorizes seizure of illegal or evidentiary items visible to a police officer who has access to the object, has some prior Fourth Amendment justification, and who has probable cause to suspect the item is connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (citation omitted). It cannot be said that the incriminating nature of these items was immediately apparent given that the officers were purportedly searching for evidence that Ferguson illegally possessed a firearm. *See Shamaeizadeh*, 338 F.3d at 554 (stating that to invoke plain-view doctrine, the evidence must be in plain view and of an "immediately incriminating" character). Again though, the introduction of this evidence at trial was harmless.

Notwithstanding, as discussed below, we find that the $5,026 was improperly forfeited.

### C. Motion in Limine

Ferguson challenges the district court's ruling denying his request to exclude the baggie of marijuana and the cash. He complains that there was nothing relevant about a personal-use amount of marijuana or $5,026 in assorted coins and one-dollar, two-dollar, and five-dollar bills found in a water-cooler sized plastic jar. The district court acknowledged that the marijuana was found after

---

[2]Ferguson does not contest the seizure of the baggie of marijuana or the shotgun and rifle rounds beyond his general challenge to the validity of the search warrant.

the time frame of the conspiracy and was only a small amount, but stated that "Ferguson's access to the marijuana remains relevant to the charges against him," and further noted that large amounts of cash are often associated with drug trafficking.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. A district court's evidentiary rulings as to relevance and unfair prejudice are reviewed for abuse of discretion. *United States v. Whittingon*, 455 F.3d 736, 738 (6th Cir. 2006). Furthermore, an erroneous admission of evidence that does not affect the substantial rights of a party is deemed harmless. *Id.* (citations omitted).

Ferguson cannot show any prejudice as to the marijuana, because the jury returned a special verdict finding him not guilty of the marijuana count. So any error was harmless. The same is true for the cash, given the ample evidence of Ferguson's guilt. However, as for the cash, the lack of relevance at trial is relevant to the question of forfeiture, as discussed below.

### D. Sufficiency of the Evidence

Ferguson argues that the evidence did not establish a conspiracy between himself and the drug dealers that he supplied. He further complains that there was no proof that the substance he provided to Shanklin on February 1, 2006, was cocaine.

A jury's verdict will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Circumstantial evidence will suffice, and "such evidence need not exclude every possible hypothesis except that of guilt." *United*

*States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). All inferences are drawn in favor of the jury's verdict. *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998).

To sustain a drug conspiracy conviction under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that (1) there was an agreement to violate drug laws; (2) the defendant had knowledge of and intent to join the conspiracy; and (3) he participated in the conspiracy. *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007).

Shanklin testified that illegal drug dealing was occurring at the barber shop. The conspiracy started with marijuana and escalated to cocaine and crack cocaine. Shanklin stated that he received cocaine from Ferguson on three occasions–twice in January 2006 and once in February 2006. Shanklin described how, on February 1, 2006, Ferguson instructed Shanklin to meet him at a parking lot to exchange the cocaine that Ferguson was fronting him, and to call Ferguson at a friend's house after Shanklin had obtained the money from an individual named Derrick Lander. Surveillance cameras captured Shanklin's delivery of the cocaine to Lander, Lander's delivery of a box with $12,000 to Shanklin in return, and Shanklin's delivery of the box to Ferguson's vehicle.

From the mere fact that the box contained a sizeable sum of money, $12,000, it can easily be inferred that Ferguson was paid for cocaine and not something else. In fact, a dealer named Antonio Wilson testified that Ferguson charged more for his cocaine than other dealers because it was of a higher quality.

Cox testified that Ferguson fronted him cocaine with the understanding that Cox would pay Ferguson once Cox sold the cocaine. And, the surveillance cameras in the barber shop recorded a conversation between Cox and Shanklin discussing Ferguson as Cox's supplier.

In short, the evidence was sufficient to support the jury verdicts on Counts 1 and 18.

### E. Sentencing Disparities

At sentencing the Government recommended a sentence of thirty years to life imprisonment. The district court questioned "whether Ferguson was the top man in the organization." The district court considered the sentences of the other codefendants in the case, noting that the next lowest sentence imposed was 240 months for Colin Carpenter. To avoid disparity between the sentences of all the codefendants, the district court granted Ferguson a variance, and sentenced him to 300 months (25 years) in prison.

Although the district court granted Ferguson a variance, Ferguson claims that it was insufficient because the district court did not consider the possibility that his codefendants might receive sentence reductions. Because he failed to present this issue below at any point, even after the district court asked if the parties had any objections to the sentence imposed, we review for plain error only. *See United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc); *see also United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004). Plain error is "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (citation and internal quotation marks omitted).

Specifically, Ferguson contends that the district court should have considered that his co-defendants, who pleaded guilty to crack cocaine offenses, would be eligible for a two-level reduction under the Sentencing Commission's retroactive amendment to the Drug Quantity Table in U.S.S.G. § 2D1.1(c). However, as this Court has noted, "[s]ubsection 3553(a)(6) is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Houston,* 529 F.3d 743, 752 (6th Cir. 2008) (internal quotation

-15-

marks and citation omitted), *cert. denied*, 129 S. Ct. 2764 (2009). Thus, there was no error, let alone plain error, affecting Ferguon's substantial rights.

### F.  Notice of Forfeiture

Ferguson objects to the forfeiture of his interest in the $5,026, claiming that he did not receive notice that it was subject to forfeiture. He also argues that there was no nexus between the cash and his drug crimes.

### 1.  Notice

Ferguson claims that he did not receive notice that the $5,026 was subject to forfeiture because the superseding indictment does not set it out specifically. This argument is raised for the first time on appeal and reviewed for plain error only.

Federal Rule of Criminal Procedure 32.2(a) states that "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a).[3]

Count 28 of the Superseding Indictment meets this requirement. It states that the United States sought forfeiture of "any and all property constituting, or derived from, proceeds [Ferguson] obtained, directly or indirectly, as a result of the said offenses." Furthermore, it is obvious that Ferguson knew that the Government sought forfeiture of the cash. The Government's trial

---

[3]Rule 32.2 was amended on December 1, 2009. The amendments do not affect our analysis of this issue. In fact, the Advisory Committee notes advise that the amendment to subdivision (a) "makes it clear that the indictment or information need only provide general notice that the government is seeking forfeiture, without identifying the specific property being sought." Fed. R. Crim. P. 32.2, Advisory Committee Notes to 2009 Amendments.

memorandum restated this intention to obtain forfeiture. Post-conviction, Ferguson filed a document entitled "Motion for Return of $5,026."

Ferguson's reliance on *United States v. Jones*, 502 F.3d 388 (6th Cir. 2007), is misplaced. *Jones* involved the government's attempt to forfeit real property and a mobile home based in part on the defendant's involvement in a conspiracy to distribute marijuana. The indictment sought to forfeit simply "3.2 acres of real property in Laurel County, Kentucky." This Court held that the mobile home on the property was not subject to forfeiture because it was not listed in the indictment, and the government failed to establish a nexus between the criminal activity charged in the indictment and the real property. *Id.* at 394.

## 2. Nexus

Property may be subject to forfeiture when it is the direct or indirect proceeds of the crime of conviction. 21 U.S.C. § 853(a)(1). The property must bear a "sufficient nexus" or "substantial connection" to the underlying offense. *United States v. Smith*, 966 F.2d 1045, 1055 (6th Cir. 1992). *See also* Fed. R. Crim. P. 32.2(b)(1) (stating that when the government seeks forfeiture of specific property, "the court must determine whether the government has established the requisite nexus between the property and the offense"). The government has the burden of proving forfeiture by a preponderance of the evidence. *Jones*, 502 F.3d at 391; *Smith*, 966 F.2d at 1052.

Neither party in this case requested a jury determination of forfeiture during trial. After trial, but before sentencing, Ferguson and his wife jointly moved for a return of the cash seized from the Mt. Lebanon Road residence under Rule 41(g) of the Federal Rules of Criminal Procedure. The court denied this motion and ordered the forfeiture of the cash pursuant to 21 U.S.C. § 853(n).

However, the forfeiture was not discussed at sentencing and was not included in the final judgment as required by Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.

In their motion, the Fergusons noted that the Government did not produce any evidence during the suppression hearing or at trial linking this money to Ferguson's drug-trafficking activities, and that the Government failed to seek civil or criminal forfeiture during trial. Rather, the Government had expressed its intention to seek a fine against Ferguson in the exact amount of the seized cash. In response, the Government conceded that "due to oversight the United States did not seek a jury verdict on the forfeiture count," but claimed that the money was nevertheless subject to criminal forfeiture. The Government argued that it also had the right to retain the money, as evidence, until the conclusion of the criminal proceeding. Finally, the Government reiterated its intention to seek imposition of a fine in the amount of the seized cash.

The district court denied the Fergusons' motion without an evidentiary hearing and *sua sponte* ordered the seized money forfeited. The district court reasoned as follows:

> The Presentence Investigation Report indicates that Ferguson has assets $10,500. His 2005 income was $12,000. It is incongruous that Ferguson would have such a large amount of cash on hand considering his level of income and his holdings. Recognizing that large quantities of cash are often associated with drug trafficking, and considering Ferguson's convictions on Counts One and Eighteen of the Superseding Indictment, this Court finds that the Government has established the requisite nexus between the $5,026 and the offense.

The problem with the district court's reasoning is that the Government never actually sought forfeiture and therefore never offered these arguments and evidence in support. Indeed, the only relevant evidence, presented by Ferguson at the suppression hearing, established the *lack* of a nexus. Special Agent Hayes testified at the suppression hearing that the approximately $5,000 in cash

-18-

discovered at the Mt. Lebanon Church Road residence was in a plastic jug in the master bedroom. Ferguson's wife testified that the money was from savings and gifts from family members. She said she and Ferguson kept it in "a plastic oversized bottle that had a plastic top that was a bank," with a slit in the top, and that it held "ones, twos and fives and change." Ferguson's mother testified for the defense that "this was like a community jar, that they put ones, twos, fives in there as they got them over about a three to five-year period." Agent Hayes testified that the denominations of the cash in the plastic jug were not consistent with the quantities of cocaine Ferguson was dealing with.

Although the presence of a not insubstantial amount of cash could perhaps raise an inference of illegality given Ferguson's modest legitimate income, the Government did not offer any evidence to support such an inference. Instead, the undisputed sworn testimony in the record supported Ferguson's alternative explanation for the money. The location of the money in the piggy-bank-like plastic jug and the small denominations of cash, saved over a three-year period, suggest that the money was not obtained by drug trafficking. Furthermore, given the lack of evidence that Ferguson engaged in drug trafficking out of the Mt. Lebanon Road residence, the Government was obliged to produce some evidence linking the seized cash to Ferguson's drug-trafficking activity. In sum, then, the money was not properly subject to criminal forfeiture because the Government failed to meet its burden of establishing a nexus between the seized cash and Ferguson's convictions.

We therefore reverse the district court's forfeiture of the cash and order it be returned to the Fergusons because the money was both improperly seized and improperly forfeited.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of conviction and sentence, but REVERSE the order of forfeiture. The case is REMANDED for further proceedings consistent with this opinion.