**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  12a0155n.06**

**No. 09-5970**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,          )

         )

    Plaintiff-Appellee,          )

         )

v.          )   On Appeal from the United States

         )   District Court for the Eastern

MICHAEL KELLEY,          )   District of Tennessee

         )

    Defendant-Appellant.          )

---

**FILED**

**Feb 07, 2012**

LEONARD GREEN, Clerk

---

Before:       MERRITT, BOGGS, and CLAY, Circuit Judges.

       BOGGS, Circuit Judge.  Michael Kelley pleaded guilty to conspiracy to distribute more than five kilograms of cocaine and conspiracy to commit money laundering.  He was sentenced to 188 months of imprisonment.  As permitted by his plea agreement, he appeals the denial of his pretrial motions to dismiss counts of the indictment against him and suppress evidence from a wiretap and searches of his car and home.  He also appeals his sentence.  We affirm.

I

       Michael Kelley was part of a group of individuals, arrested in 2008, who were involved in the distribution of cocaine from Chattanooga, Tennessee to sell in Atlanta, Georgia.  R.360 at 8–9. Police became aware of Kelley due to his calls to Demarcus Akins, on whom the police had a wiretap.  Based on evidence gathered in the surveillance of Akins and others, Tennessee police

requested and obtained a wiretap on Kelley's phones. R.157 at 3 (reproducing the affidavit in support of the wiretap).

In monitoring the wiretap, police overheard a call in which Kelley communicated that he would be bringing $69,500 to Akins. After his arrest, Kelley conceded in his plea agreement that he was bringing the money to Akins to pay him for three kilograms of cocaine.

Police stationed two officers, along with a drug-sniffing dog, on the road where Kelley was driving. They were told to pull Kelley over if they noticed a traffic violation. R.288 at 24, 29–30. Officer Ritter observed Kelley following a van too closely, in violation of Tennessee law, and initiated a traffic stop. During the stop, Ritter observed Kelley acting nervous. He asked if he could search the car, and Kelley refused. Officer Thompson arrived with the dog at this time and conducted a dog-sniff of the car. The dog alerted at the front of Kelley's vehicle.

Based on his probable-cause belief that Kelley had drugs in his car, Ritter conducted a pat-down search of Kelley. Ritter felt a bulge in Kelley's pocket. When he asked what it was, Kelley stated that it was money to purchase supplies for his business. The pocket contained about $1,570. The officers then searched Kelley's car. In the trunk they found a bag containing plastic bags that held $69,500. Kelley told the officers that the money was for purchasing business supplies. R.288 at 50–51. The officers seized the money from the trunk and the money from Kelley's pocket, and told him that if he could prove that the money was for legitimate purposes within three days, they would return it. Kelley was then released with a warning citation for following too closely.

Kelley later obtained a contract from a local businessman stating that he was lending Kelley $69,500 for improvements to Kelley's business. Kelley PSR at 8. The two men backdated the

contract so that it would precede the traffic stop. A Chattanooga city councilman put Kelley in contact with a former co-worker who accepted payment from Kelley to put a backdated notary stamp on the contract. Kelley then gave the contract to police in order to have the $69,500 returned. The police did not return the money.

On March 18, 2008, Detective Andy Browne sought and obtained a search warrant for Kelley's house. R.129-2. Detective Browne based his affidavit for the warrant on the abovementioned facts as well as additional intercepted phone calls that suggested individuals were coming to Kelley's house to purchase or drop off drugs. During the search of Kelley's home, agents found and seized six ounces of cocaine, several thousand dollars, a high-volume money counter, and drug-trafficking paraphernalia.

On May 13, 2008, a grand jury charged Kelley and six other individuals with conspiracy to distribute and of possession with the intent to distribute more than five kilograms of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One). Kelley was also charged with three counts of money laundering, in violation of 18 U.S.C. § 1956 (Counts Two, Three, and Six); two counts of conspiracy to obstruct a grand-jury investigation, in violation of 18 U.S.C. § 1512(c)(2) (Counts Four and Seven); and one count of distribution and of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(C) (Count Nine).

Before trial, Kelley moved to dismiss Counts Two, Three, Four, Six, and Seven of the indictment. R.125; 126. He also moved to suppress evidence obtained through the wiretap of his phones, the search of his car, and the search of his home. R.127; 128; 129. After conducting a hearing related to the car search, a magistrate judge recommended denial of all of Kelley's

suppression motions. The district court adopted the magistrate judge's reports and recommendations, denying the motions.

Kelley pleaded guilty to Counts One and Two of the indictment, pursuant to a plea agreement. Counts Three, Four, Six, and Seven were later dismissed.

At Kelley's sentencing, the judge added a two-level enhancement for obstruction of justice, based on Kelley's use of the backdated contracts to seek reimbursement of the $69,500. Kelley was sentenced to 188 months of imprisonment for Count One and Count Two of the indictment, to be served concurrently, and five years of supervised release.

On appeal, Kelley argues that the district court erred in refusing to grant his motions to dismiss Counts Two, Three, Four, Six, and Seven of the indictment and his motions to suppress evidence gathered from the wiretap on his phone and the searches of his car and home. He also appeals his sentence; specifically, he appeals the two-level enhancement the sentencing court imposed for obstruction of justice and its determination of drug quantity. He also challenges the reasonableness of his sentence.

II

A

Kelly argues on appeal that the trial court erred in denying his motion to dismiss Counts Two, Three, Four, Six, and Seven of the indictment.

With regard to the district court's legal conclusions, we review the denial of a motion to dismiss an indictment *de novo*. *See, e.g.*, *United States v. Penney*, 576 F.3d 297, 303 (6th Cir. 2009).

All five counts of the indictment that Kelley challenges track the language of the statute and set forth a sufficient set of facts to prove a violation of the statute; therefore, these counts were legally sufficient. *See, e.g.*, *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010); *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001). The trial court did not err when it denied Kelley's motion to dismiss those counts of the indictment.

B

Kelley argues that the district court erred when it overruled his motions to suppress evidence that was found through a wiretap of his phone, during a search of his car, and during a search of his home. Kelley also argues that the district court erred in denying him a *Franks*[1] hearing on this issue.

When reviewing a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. *Penney*, 576 F.3d at 306 (citing *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)). We view the evidence in the light most likely to support the decision of the district court. *Ibid.*

In his motion below, Kelley argued that the government failed to overcome the statutory presumption against wiretaps. Specifically, the motion argued that the government failed to establish

---

[1]*Franks v. Delaware*, 438 U.S.154 (1978).

necessity with regard to Kelley (as opposed to the other individuals for whom the government had received wiretap warrants previously).

The affidavit in support for the warrant on Kelley's phones stated that, after Akins's phone was tapped, "agents immediately began intercepting phone calls between Akins and the cell phones of Michael Kell[e]y . . . . The intercepted conversations . . . discuss[ed] large amounts of illegal narcotics and large sums of U.S. currency." The affiant also described several calls intercepted between Kelley and Akins on February 3, 2008, during which Kelley asked Akins to call him on his "other phone," the two discussed a "four Jersey," which in the affiant's experience was a term used in drug deals, and they talked about counting money. The 47-page affidavit goes on to discuss in detail why the government needed to put a wiretap on Kelley's phone, stating, that "the interception of wire communications . . . is the only available investigative technique [with] a reasonable likelihood of revealing and securing admissible evidence," and explaining the limitations of all other investigative techniques, including physical surveillance, confidential sources, infiltration by undercover officers.

The necessity requirement "requires a determination that other means of obtaining information, such as physical surveillance, use of informants, and other investigative techniques, would be unsuccessful." *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988). Sixth Circuit case law does not interpret the necessity requirement to demand a showing of the "absolute impossibility of all other means;" rather, a "reasonable statement of the consideration or use of other investigative means is adequate." *Id.* at 164.

In Kelley's case, the wiretap affidavit provided sufficient detail about alternative means of obtaining information and also identified the reasons why the wiretap was the best of those alternatives. The district court was not in error in determining that the wiretap affidavit was adequate and sufficiently demonstrated necessity.[2]

Kelley's motion for a *Franks* hearing was properly denied. *Franks* holds that where a defendant makes a "substantial preliminary showing" that a false statement that was made knowingly, recklessly, or with an intentional disregard for the truth, is included by the affiant in a search warrant affidavit, and that the false statement was necessary to the issuing magistrate's finding of probable cause, then the defendant is entitled to a hearing. *Franks*, 438 U.S. at 155–56. This showing must be "accompanied by an offer of proof . . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained . . . ." *Id.* at 171. Kelley alleged that the affiant's statement that "Kelley, Akins, Lewis and their associates have extensive experience trafficking drugs and have numerous arrests for drug violations" was false as to him. However, this claim was not supported by an offer of proof. Further, the statement, even if it was false, was not necessary to the issuing magistrate's finding of probable cause. Therefore, Kelley's motion for a *Franks* hearing was properly denied.

---

[2]Kelley also argued that the wiretap on his co-defendant Akins's phone was illegal, and, as the "fruit" of that wiretap, the wiretap on Kelley's phone was illegal, as well. Kelley's basis for thinking the wiretap on Akins's phone was illegal is that the warrant used to obtain a wiretap on his phone came from a Tennessee court, but Akins lived in Georgia. Because this argument was not raised below, we review it only for plain error, but it would fail under any standard. A wiretap may be lawfully sought in either the location of a tapped phone or the original listening post. *See United States v. Johnson*, No. 08-5911, 2010 WL 3736881, at *2–3 (6th Cir. Sept. 17, 2010).

C

Kelley next argues that the district court erred in overruling his motion to suppress the evidence obtained in the search of his car. Kelley's motion below disputed the validity of the traffic stop and the basis for the search.

Kelley was stopped when the officer noticed that Kelley was following too closely behind another vehicle. The officer testified that Kelley was following within three to five feet of the other vehicle, when, at about 55 mph, the intervening distance should have been approximately fifty feet.

The officers did not search Kelley or his car until the drug-sniffing dog alerted, a positive indication that drugs were in the vehicle. Once the dog alerted, the officers conducted a pat-down search of Kelley for the purpose of "officer[] safety." Officers Ritter and Thompson then conducted a search of Kelley's car, including the trunk.

Kelley first argues that the traffic stop was illegal. However, the officer testified that he witnessed Kelley violate a Tennessee traffic law. An officer possesses the probable cause necessary to conduct a traffic stop when he observes a driver violate a traffic law. *Whren v. United States*, 517 U.S. 806, 810 (1996). The magistrate judge found Officer Ritter's testimony credible, and Kelley does not present any argument that such a finding was in error. Kelley argues that there was no legitimate basis for the traffic stop, but he does not give any reason why Ritter's testimony should have been disbelieved. Therefore, the district court's holding that there was probable cause for the initial traffic stop was proper.

Kelley next argues that the police search of his car was illegal, arguing that the dog alerted only at the front of the car and that therefore there was no basis for searching his trunk. However, it is well settled that an alert from a trained dog provides probable cause for a search for drugs. *United States v. Hill*, 195 F.3d 258, 273 (6th Cir. 1999). Further, the search based on such probable cause may be of the entire car, including the trunk. *United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) ("[I]f probable cause justifies the search of the lawfully stopped vehicle, it justifies the search of every part of the vehicle and the contents that may conceal the object of the search.") (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)). The magistrate judge's finding that Officer Thompson's dog was certified to detect drugs was not disputed, and Sixth Circuit case law clearly demonstrates that the search of an entire car for drugs after a drug-dog's alert is reasonable. Therefore, the search of Kelley's car was justified.

D

Kelley's final motion to suppress evidence deals with the search of his house, conducted pursuant to a search warrant. Kelley challenged the sufficiency of the warrant, arguing that "[j]ust because an officer says something does not make it correct and self-authenticating."

The search warrant for Kelley's house was issued by a state criminal-court judge based on the affidavit of Detective Andy Browne of the Hamilton County Sheriff's Office. The affidavit described the ongoing investigation of Michael Lewis for cocaine distribution, that Kelley had been implicated in this investigation by his phone calls with Lewis, the ensuing wiretap of Kelley's phones, the subsequent search of Kelley's car and the seizure of $69,500, and several subsequent

phone calls that seemed to discuss illegal activity.  Based on this evidence, Browne stated that he believed that a search of the house would reveal evidence of illegal cocaine trafficking such as drug ledgers, money, phone numbers, and paraphernalia.  Indeed, during the search police found cocaine, money, a high-volume money counter, and other drug paraphernalia.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause , supported by Oath or affirmation . . . ." U.S. CONST. amend. IV.  For the issuing magistrate to issue the warrant, the affidavit supporting the warrant must contain sufficient information to allow the issuing magistrate to determine that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The information provided may come from the direct knowledge of the affiant, as well as hearsay. *Ibid.*  The issuing magistrate's finding of probable cause is accorded great deference, and should only be reversed if the reviewing court finds it to have been made arbitrarily. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000).  In this case, the totality of the circumstances described in Browne's affidavit clearly supports a finding of probable cause—this is not a "bare-bones affidavit."  The district court did not err in denying Kelley's motion to suppress the evidence gathered in the search of his residence.

III

Kelley raises challenges to his sentence on appeal.  He objects to the two-level guideline increase for obstruction of justice.  He objects to the drug quantity with which he was charged,

arguing that he should have been sentenced based on a 5–15 kilogram range, not a 15–50 kilogram range. Finally, he argues that the district court failed to consider all of the § 3553(a) factors.

We review the application of a sentencing enhancement for obstruction of justice for clear error. *United States v. Jackson-Randolph*, 282 F.3d 369, 388–90 (6th Cir. 2002).

Section 3C1.1 of the United States Sentencing Guidelines states:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

At sentencing, the judge stated that the government had proved, and Kelley pleaded guilty to, using fake checks and backdated contracts to have the $69,500 seized in the search of his car returned to him. Kelley argues that he did not obstruct or attempt to obstruct justice because there was no realistic chance that he would get his money back. This argument fails. Kelley provided law enforcement with fraudulent documents in order to have illegally obtained funds returned to him. He unquestionably attempted to obstruct justice. *See, e.g., United States v. Streets*, No. 09-3362, 2010 WL 4537961, at *11–12 (6th Cir. Nov. 12, 2010).

Kelley also argues that the district court erred in determining the drug quantity that would determine the range of his sentence. The district court estimated Kelley's drug quantity to be eighteen kilograms of cocaine, based on the detective's statements that Kelley's co-conspirator, Lewis, whose estimates had been accurate in the past, stated that Kelley had made six or seven trips for him, transporting three to five kilograms of cocaine on each trip. The detective had also

reviewed the wiretap transcripts before trial and testified that they identified at least six trips where Kelley transported money and drugs between Chattanooga and Atlanta. Kelley argues that the district court was wrong to credit the detective's testimony over the testimony of Akins, one of Kelley's co-conspirators, who estimated at the sentencing hearing that Kelley had transported fewer than fifteen kilograms of cocaine for him.

We review the district court's determination of drug quantity for clear error. *United States v. Auston*, 355 F. App'x 919, 924–25 (6th Cir. 2009). Drug quantity may be determined based on testimonial evidence, and need only be an estimate, but the estimate must be conservative. *United States v. White*, 563 F.3d 184, 196 (6th Cir. 2009).

Here, there were two permissible views of the evidence, the detective's and Akins's. The district court was not in error in choosing to credit the testimony of the detective. *See, e.g.*, *United States v. Clark*, 136 F. App'x 831, 834 (6th Cir. 2005). Further, eighteen kilograms of cocaine was a conservative estimate of drug quantity to draw from the credited testimony. The district court's determination of drug quantity was not unreasonable.[3]

---

[3]Kelley also argues that the district court erred when it ordered forfeiture of the money the police seized from Kelley's person during the search of his automobile, alleging that the district court's forfeiture was contrary to our holding in *United States v. Ferguson*, 385 F. App'x 518 (6th Cir. 2010). Kelley does not indicate what he believes the holding in *Ferguson* to be or how the district court violated the holding. Therefore, Kelley's argument is waived. *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

In his final argument, Kelley claims that the district court erred in sentencing him because it did not consider all of the § 3553(a) factors. The district court need not "explicitly reference each of the § 3553(a) factors in its sentencing determination; but there must be sufficient evidence in the record to affirmatively demonstrate the court's consideration of them." *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (internal quotation marks and brackets omitted).

In Kelley's case, the district court specifically noted that it had considered the § 3553(a) factors in calculating his sentence. R.351 at 53. It then discussed several factors, such as Kelley's criminal history and the need to provide him with appropriate treatment, before sentencing Kelley to a sentence at the low end of the guidelines range. Contrary to what Kelley contends, the record demonstrates that the court carefully considered the § 3553(a) factors in determining his sentence.

IV

For these reasons, we AFFIRM the judgment of the district court.